ATLANTA INTERNATIONAL INSURANCE COMPANY *et al.*, Plaintiffs-Appellees, v. CHECKER TAXI COMPANY, INC., *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—90—1004, 1—90—1005 cons.

Opinion filed May 2, 1991.—Rehearing denied June 19, 1991.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Alvin R. Becker and Joel M. Horwich, of counsel), for appellant Checker Taxi Company, Inc.

Sonnenschein, Nath & Rosenthal, of Chicago (John I. Grossbart and Richard C. Chessen, of counsel), for appellant Guillermo Bonillo.

Conklin & Roadhouse, of Chicago (John S. Roadhouse and Alexandra Jackson Rieser, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Atlanta International Insurance Company and Royal Insurance Company, filed a declaratory judgment action seeking a determination that they had no duty to provide excess insurance coverage for losses arising out of an accident involving Checker Taxi and one of its drivers, an additional insured. Atlanta and Royal contended that they were discharged from contractual liability under their excess insurance policies because Checker failed to timely provide notice of a loss and subsequent wrongful death lawsuit, in contravention of the policies' notice provisions. The trial court granted both insurers' motions for summary judgment, ruling that Checker's notice, given two years after the accident, was untimely as a matter of law. The court further held that the driver of the taxi, Guillermo Bonillo, was not entitled to coverage because Checker's failure to give prompt notice also was binding on him as an additional insured.

Both Checker and Bonillo appeal from their adverse judgments. The issue common to both parties' appeal is whether the trial court erred in finding the timing of notice unreasonable as a matter of law. Bonillo additionally contends that his particular circumstances differ from those of Checker and thus Checker's failure to give prompt notice should not bar his own right to be considered separately for insurance coverage under the policies.

We reverse.

BACKGROUND

On December 30, 1983, Bonillo was driving a leased Checker cab when it collided with the car driven by Elizabeth Hoxie. She died as a result of her injuries. In accordance with his lease obligations, Bonillo immediately gave notice of the accident to Checker and Checker's primary insurer, American Country Insurance Company (ACIC). Although Bonillo was unaware of the fact, Checker also maintained excess insurance coverage issued by Atlanta and Royal.

On the same day as the accident occurred, ACIC sent an investigator to the scene to interview witnesses and speak with police and fire personnel. The investigator obtained a police report and took an

initial set of photographs. In the days that followed, the insurance company through its investigators secured the Checker cab, took more photographs of the scene, and engaged a consulting company to conduct a scientific analysis or reconstruction of the accident. The resulting report confirmed part of Bonillo's story, that the rear bumper of the cab he was driving had been struck shortly before the accident.

According to Bonillo, while he was driving south on Lake Shore Drive, within the speed limit, he noticed a white car coming up fast behind him, driving erratically and swinging in and out of lanes. In seconds the car had swerved directly behind Bonillo's cab, and before Bonillo could react, the car swerved to the adjoining lane on the right in an attempt to avoid colliding with the cab. In so doing, the white car struck the rear bumper of the cab, causing it to go out of control. The roads were wet and slick, and the impact from the white car caused Bonillo to drive across the concrete median strip into oncoming northbound traffic. Bonillo's cab and Elizabeth Hoxie's automobile collided head-on. The white car made no attempt to stop.

Under Illinois law, Checker and other taxi companies are required to maintain a certain amount of liability coverage for injuries arising from cab drivers' use of leased automobiles. Checker obtained primary coverage in the amount of $250,000 and also purchased several layers of excess coverage. ACIC, the primary insurer, was obligated to pay up to $250,000 in primary coverage and an additional $150,000 as the first layer of excess.

Checker purchased a second layer of excess coverage from Atlanta. This coverage would take effect after the $400,000 total coverage provided by ACIC was exhausted. Maximum payment under Atlanta's policy was $850,000. Royal provided the third layer of excess coverage, which would take effect after the $1.25 million in combined coverage provided by ACIC and Atlanta. The maximum pay out under the Royal policy was $9 million.

Each successive layer of insurance tracks the coverage of the layer below, meaning that the language of ACIC's primary policy governs the nature and extent of liability coverage. The ACIC policy definition of "insureds" includes persons in Bonillo's position, and there is no dispute over his status as an additional insured under all of the policies.

The notice provision in Atlanta's policy requires the insured to "immediately advise the Company of any accident or occurrence which appears likely to result in liability under this policy."

Royal's notice provision states in part:

"Whenever the Insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured shall be held liable, is likely to involve this policy, notice shall be sent to the Company as soon as practicable \*\*\*."

Neither policy requires the insured to give notice of every accident or claim made, and the issue in the pending case centers on whether the notice Checker gave both insurers, two years after the accident, was fatally tardy.

OPINION

The trial court apparently interpreted the above notice provisions as requiring Checker to give notice either contemporaneously with the actual collision or no later than the filing of the wrongful death lawsuit. In so doing, the court found it unreasonable, as a matter of law, for Checker to wait two years after the date of the occurrence to give notice to its excess insurance carriers. *Cf. McFarlane v. Merit Insurance Co.* (1978), 58 Ill. App. 3d 616, 374 N.E.2d 951 (lengthy passage of time is not an absolute bar); *Grasso v. Mid-Century Insurance Co.* (1989), 181 Ill. App. 3d 286, 536 N.E.2d 977 (two-year delay not unreasonable under the circumstances of the case).

■ In view of the undisputed facts of record, we disagree with the trial court's conclusion. After Bonillo reported the accident, investigators for ACIC conducted a thorough investigation and compiled a substantial amount of evidence. In addition to procuring witness statements, photographs, police reports and similar material, the investigators located a white Oldsmobile which had recently undergone major front-end body repair and which was suspected of being the hit-and-run automobile. In conjunction with Bonillo's report, the investigation indicated that Bonillo had not been at fault. This preliminary decision that Bonillo was not negligent and thus not legally liable to the decedent is relevant to the reasonableness of Checker's decision not to immediately notify the excess carriers.

■ In contrast to primary insurance, excess coverage is contingent on the exhaustion of the underlying policy or policies of insurance. The primary insurer, not the excess carrier, normally investigates the facts of the occurrence and undertakes the defense of the personal injury lawsuit. (See *Brownlee v. Western Chain Co.* (1979), 74 Ill. App. 3d 804, 393 N.E.2d 515.) Accordingly, the excess insurer generally does not require notification of those occurrences that are unlikely to result in a claim for excess insurance coverage under its policy. (*Brownlee*, 74 Ill. App. 3d at 810, 393 N.E.2d at 519, quoting

*Greyhound Corp. v. Excess Insurance Co. of America* (5th Cir. 1956), 233 F.2d 630, 634 (excess insurer does not undertake the defense of assured and the notice provision of excess policy contemplates " 'the exercise of some judgment on the part of the assured in evaluating the case' ").) The key question involved in the pending case, therefore, is this: At what point should Checker reasonably have known that its excess insurance coverage would be implicated?

The simple answer, according to Atlanta and Royal, is "right away." According to them, it should have been obvious that the death of a 36-year-old woman, the mother of two small children, could result in an award of damages in excess of the $400,000 coverage provided by ACIC. The woman's estate filed a wrongful death action three weeks after the occurrence, on January 20, 1984, seeking damages in excess of the jurisdictional minimum amount of $15,000. Checker did not notify its excess carriers of the Hoxie suit, however, until almost two years after the accident. The record indicates that notice was given following a pretrial conference in which the attorneys for the Hoxies presented a settlement demand of $1.5 million. Given the amount of the demand and the inability of the parties to negotiate a settlement, Checker notified both of its excess carriers of their potential coverage liability.

The Atlanta policy requires Checker to give immediate notice whenever an accident or occurrence "appears likely to result in liability" under Atlanta's policy. We do not agree that the mere fact a young mother was killed or the mere filing of a wrongful death complaint equates with an appearance of likeliness that the insured will be held legally liable in damages. If Atlanta wanted immediate and "automatic" notice of all accidents (or, for example, those in which a death occurred), Atlanta easily could have inserted appropriate policy language to that effect. Such a provision would have eliminated any perceived ambiguity regarding the efficacy of notice in the pending case. Instead, the notice provision contemplates that the insured may exercise some discretion in evaluating the claim. (See *Brownlee*, 74 Ill. App. 3d 804, 393 N.E.2d 515.) Here, the results of the initial investigation indicated that Bonillo's taxi may have been launched into Hoxie's path by the hit-and-run vehicle, through no fault of Bonillo's.

Atlanta and Royal nevertheless assert that Checker *should have* realized at the time of the accident that such an occurrence *might* result in a large award of damages, if the jury decided that Bonillo was at least comparatively negligent. We do not believe, however, that the excess carriers should absolve themselves from payment pursuant to their policies under the circumstances. This is particularly

true given the fact that neither excess insurer has asserted prejudice resulting from the delay. See *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 302, 388 N.E.2d 253 (prejudice is one factor in the reasonableness determination); see also *Brownlee*, 74 Ill. App. 3d at 812, (excess insurance policy that referred to insured's actual knowledge of claim as triggering event to give notice under excess policy did not impose a duty of inquiry on insured, despite the fact prejudice may have resulted to insurer); *Insurance Co. v. Associated International Insurance Co.* (9th Cir. 1990), 922 F.2d 516, 523 (noting that since excess insurance carriers have no right to control the personal injury lawsuit and thus less need for early notice, the likelihood of prejudice from late notice to excess carriers is more remote); but *cf. Sisters of Divine Providence v. Interstate Fire & Casualty Co.* (1983), 117 Ill. App. 3d 158, 453 N.E.2d 36 (reviewing primary insurance cases and concluding that excess insurance carrier is on same footing regarding late notice and thus may be relieved of liability without establishing that prejudice resulted from lateness).

Royal's notice provision is worded differently from Atlanta's, requiring notice "as soon as practicable" after the insured has information from which it reasonably may be concluded that Royal's layer of excess coverage will be implicated if the insured is found liable in damages to the injured party. Royal's coverage would not begin, however, until the $1.25 million point. The Hoxie settlement demand was $1.5 million. Again, we find that neither the occurrence of the accident nor the filing of the wrongful death action in this case triggered an absolute duty at that time to give notice of potential claim under the excess policy. The results of the pretrial conference, however, changed the picture and Checker realized that notice to its excess insurance carriers was necessary. By that time, the parties would have had the opportunity to complete discovery and research the liability and damages issues. Moreover, the parties might have considered other, practical matters such as the possibility that a jury would award a large verdict despite what the defense might view as a weak case of negligence.

In our opinion, the two-year "delay" in giving notice to the excess carriers was not unreasonable given the circumstances of this case. See *McFarlane v. Merit Insurance Co.* (1978), 58 Ill. App. 3d 616, 619, 374 N.E.2d 951, 953 ("The determination of what constitutes a reasonable period of time [to notify the insurer after an accident] depends on the facts and circumstances in a particular case"); *Grasso v. Mid-Century Insurance Co.* (1989), 181 Ill. App. 3d 286, 289, 536

N.E.2d 977, 979 (where facts are undisputed, question regarding reasonableness of notice is one of law).

We emphasize that, unlike the situation with primary insurance coverage, Checker's duty to give notice to Atlanta and Royal did not ripen until such time as Checker believed it reasonably likely that a claim under the excess insurance policies would be made. Whether viewed subjectively or objectively, Checker's belief may be open to question, particularly in hindsight. We do not believe it appropriate, however, to allow an excess carrier to escape liability after granting its insured discretion in deciding the point at which liability under the policy becomes "likely." Excess insurance carriers are free to specify in their notice provisions any triggering events they deem desirable, such as notice of any occurrence that results in grave bodily injury or death, or the filing of certain types of claims or lawsuits.

Because we have concluded that Checker's notice was timely under the policies we need not address Bonillo's argument regarding his separate rights and duties as an additional insured under the policies. The facts upon which summary judgment was granted are not in dispute. We find that the trial court erred in holding that the notice furnished to Atlanta and Royal violated the terms of their respective policies. Therefore, we reverse the trial court's grant of summary judgment to Atlanta and Royal and remand for entry of judgments in favor of Checker and Bonillo as to coverage.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.