FIRST STATE INSURANCE COMPANY, Plaintiff-Appellee, v. MONTGOMERY WARD AND COMPANY, INC., et al., Defendants-Appellants.

First District (1st Division) No. 1—92—1758

Opinion filed February 14, 1994.—Rehearing denied March 28, 1994.

Johnson & Bell, Ltd., of Chicago (Paul J. Wisner, Steven I. Rapaport, Thomas H. Fegan, and Mindy Kallus, of counsel), for appellants.

Bullaro, Carton & Stone, of Chicago (Raymond R. Pesavento, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendants, Montgomery Ward & Co., Inc., and Marcor, Inc. (collectively Ward), appeal from the trial judge's order granting summary judgment to plaintiff, First State Insurance Co. (First State), in this declaratory judgment action. The trial court found that Ward failed to tender proper notice of a claim on an excess insurance policy. We affirm.

In 1977, Marjorie Dabney suffered crippling burns over 40% of her body. The burns allegedly were caused by a fire which started in a faultily designed heater, sold to her by Ward. In 1979, Dabney sued Ward in the United States District Court for the Southern District of Iowa. In her complaint, Dabney claimed $3.275 million in damages. A jury awarded her approximately $1 million. The United States Court of Appeals for the Eighth Circuit reversed, awarding Ward a new trial. (*Dabney v. Montgomery Ward & Co.* (8th Cir. 1982), 692 F.2d 49.) At the second trial, in 1984, a jury again found in Dabney's

favor and awarded $2 million. Prejudgment interest increased the amount owed by Ward to over $2.8 million. The eighth circuit affirmed. *Dabney v. Montgomery Ward & Co.* (8th Cir. 1985), 761 F.2d 494.

Ward had insured itself for $250,000 and held an additional $2 million in insurance through Forum Insurance Company. Ward also holds a policy with First State, which covers claims in excess of $2.25 million. The First State policy contains a notice provision which provides:

> "Whenever the insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the insured shall be held liable, is likely to involve this Policy, notice shall be sent to [First State] *** as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims."

Pursuant to this clause, Ward notified First State of the Dabney litigation on January 30, 1984, on the eve of the second trial, after settlement negotiations between Ward and Dabney had broken down. On that date, Dabney had been prepared to accept a Ward settlement offer of $450,000; however, when she did so, Ward told her it had only offered $425,000. Dabney discontinued negotiations, and Ward alleged that her attorney stated that she would go to trial and seek $2 million in damages, upon which Ward notified First State that the excess policy had been implicated.

First State filed this declaratory judgment action in the circuit court on June 25, 1985. The complaint consisted of four counts, only one of which is the subject of this appeal. That count alleged breach of the notice clause. The parties filed cross-motions for summary judgment. In support of its claim, First State cited the $3.275 million sought in the *ad damnum* in Dabney's original complaint, the severe nature of Dabney's injuries, and the $1 million verdict in the first trial. Ward argued that the first time it had notice that the case involved potential liability in excess of $2 million was when settlement negotiations broke down in 1984.

On October 11, 1991, the trial judge found that Ward was not entitled to summary judgment; however, the judge indicated that he would consider granting First State's motion if it could present evidence that at the first *Dabney* trial, her trial attorney had asked the jury for an award of $2 million or more. To that end, the parties took the deposition of Dabney's trial counsel, William Bauer. During the

deposition, Bauer testified that he recalled asking the jury for over $2 million. He was "within a few percentage points of a hundred" certain of this figure. Bauer swore in a subsequent affidavit that during closing argument, he had asked the jury to return an award for Dabney in excess of $2 million.

To counter Bauer's affidavit, Ward submitted the affidavits of two of the jurors from the first *Dabney* trial. Dolores Fern Lynch swore that, to the best of her recollection, Bauer had only asked the jury to return an award of $1 million. Cathern Waterman swore that, to the best of her recollection, Bauer had asked the jury to return an award of either $1 million or $1.5 million. Ward argued that these affidavits raised a genuine issue of material fact which rendered the case inappropriate for summary judgment.

First State and Ward agreed that after the first *Dabney* trial, but prior to the first appeal, the magistrate who tried the case stated off the record that he would not have found Ward liable for Dabney's injuries. However, if he had been the fact finder solely on damages, he would have awarded Dabney $2 million. In his deposition, Bauer stated that his recollection of the magistrate's statement convinced him that he had asked the jury to return a judgment in excess of $2 million. At his deposition, Ward's trial attorney, Michael Liebbe, testified that he had not taken the magistrate's remark seriously— that he thought the magistrate had made the remark to balance his statement that he would not have found Ward liable at all.

On January 7, 1992, the trial judge granted First State's motion for summary judgment, relying on Bauer's affidavit and the magistrate's post-trial damage assessment.

Ward contends that the trial court erred in granting summary judgment. Pursuant to section 2—1005 of the Code of Civil Procedure, a trial judge may grant summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) Summary judgment is a "drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt." (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271, 586 N.E.2d 1211.) In reviewing a trial court's grant of summary judgment, this court's function is to decide whether the trial court correctly determined whether summary judgment was appropriate as a matter of law. *John v. City of Macomb* (1992), 232 Ill. App. 3d 877, 596 N.E.2d 1254.

A trial court has no discretion in deciding a motion for summary

judgment. (*Loyola Academy*, 146 Ill. 2d at 272.) The trial judge's function is not to decide facts, but to ascertain whether a factual dispute exists, and this court is required to reverse if either there is a genuine issue of material fact or an erroneous interpretation of the law. In determining the existence of a genuine issue of material fact, courts must construe the record on file in the case strictly against the movant and liberally in favor of the opponent. *Barber-Colman Co. v. A&K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 1070-71, 603 N.E.2d 1215.

■ In *Brownlee v. Western Chain Co.* (1979), 74 Ill. App. 3d 804, 393 N.E.2d 515, this court noted that excess insurers (like First State) do not usually participate in the defense of the case and therefore do not require notice unless it appears likely that the claim will implicate the excess policy. As a result, notice provisions like the one in this case contemplate the exercise of some discretion on the part of the insured. Thus, when an insurance policy contains a notice provision which grants to the insured discretion to determine when it is likely that the policy will be implicated, the "insured must show that notice was given when it concluded that the excess insurance policy was implicated and, if the facts are not in dispute, whether the insured acted unreasonably by withholding notice to the insurer up to that point, is a question of law for the court to determine." (*Hartford Accident & Indemnity Co. v. Rush-Presbyterian-St. Luke's Medical Center* (1992), 231 Ill. App. 3d 143, 150-51, 595 N.E.2d 1311, *appeal denied* (1992), 146 Ill. 2d 627, 602 N.E.2d 452.) In addition, in considering the reasonableness of the insured's decision, we look to the extent to which the insurer was prejudiced by the delay. *Hartford Accident*, 231 Ill. App. 3d at 151; *Sisters of Divine Providence v. Interstate Fire & Casualty Co.* (1980), 117 Ill. App. 3d 158, 162, 453 N.E.2d 36.

It is undisputed that Ward concluded that notice was required on January 30, 1984, and that it gave First State notice on that day. Thus, the legal question to have been answered by the trial judge was whether Ward's decision was reasonable under the circumstances.

■ Under *Hartford Accident*, the undisputed fact that Dabney's original 1979 complaint sought $3.275 million does not, in and of itself, render the several years' delay legally unreasonable. (*Hartford Accident*, 231 Ill. App. 3d at 152.) Accordingly, the trial judge sought to focus attention on additional factors in the *Dabney* proceedings which would have placed Ward on notice that the case involved exposure exceeding $2 million. The settlement negotiations after the reversal of the first *Dabney* verdict never approached $1 million, let

alone $2 million. Thus, the trial judge wanted to know what amount Dabney asked for in the first trial. In his affidavit, Dabney's attorney swore he requested $2 million. However, Ward presented counteraffidavits of two of the jurors who said that they were asked to return a verdict of $1 million and $1 or $1.5 million, respectively. Although the conflict between these recollections raised a question of fact which might otherwise render this case inappropriate for summary judgment, we find, as a matter of law, that Ward was on notice of its potential liability long before the first *Dabney* trial went to the jury.

Although *Hartford Insurance* held that the $3.275 million *ad damnum* is not conclusive, neither is it irrelevant to our determination. (See *Hartford Insurance*, 231 Ill. App. 3d at 152.) Given the severity of Dabney's injuries, the request in the *ad damnum* was not a patently absurd figure. Indeed, it was quite reasonable, especially considering the ultimate judgment rendered by the second jury. Furthermore, prior to the first trial, Ward's attorneys assessed Dabney's injuries as "grotesque at best," and indicated that a jury would likely find in her favor. In the same assessment, Ward's attorneys acknowledged that Dabney's settlement demands were in excess of $1 million. Between the *ad damnum*, the severity of the injuries, and the settlement demands, Ward had sufficient information (see *Hartford Accident*, 231 Ill. App. 3d at 152), very early on in the initial *Dabney* proceedings, to conclude that its potential exposure would likely approach the threshold of its excess insurance.

Furthermore, First State suffered significant prejudice from Ward's delay in notifying it. On the eve of the second trial, Dabney was prepared to settle the case for a mere $450,000. Yet, Ward rejected this offer because it had only offered her $425,000. Clearly, had Ward accepted Dabney's settlement proffer, First State would have suffered no exposure. Had First State been made aware of the proceedings, it no doubt would have encouraged such a result.

In light of the undisputed facts, we find that Ward's failure to notify First State prior to the first *Dabney* trial was unreasonable as a matter of law. Therefore, because the pleadings, depositions and admissions on file, together with the affidavits, show there is no genuine issue of material fact, First State was entitled to summary judgment.

Affirmed.

BUCKLEY and MANNING, JJ., concur.