510

JOHN BIEDA, Plaintiff, v. CARSON INTERNATIONAL, Defendant-Appellant (The City of Chicago, Defendant-Appellee).—THE CITY OF CHICAGO, Third-Party Plaintiff-Appellee, v. LIBERTY MUTUAL INSUR-ANCE COMPANY, Third-Party Defendant-Appellant.

First District (2nd Division)   Nos. 1—94—3889, 1—94—3890 cons.

Opinion filed March 20, 1996.

Pretzel & Stouffer, Chartered (Edward B. Ruff III, Donald J. O'Meara,

Jr., Robert Marc Chemers, and Daniel G. Wills, of counsel), and Belgrade & O'Donnell, P.C. (Steven B. Belgrade and Andrea J. McIntyre, of counsel), both of Chicago, for appellants.

Bullaro, Carton & Stone, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

In this appeal, we construe provisions of a lease agreement and an insurance contract to determine which of two policies of insurance provided coverage for damages related to the underlying cause of action. For reasons that follow, we affirm the judgment of the circuit court.

Plaintiff John Bieda filed a negligence action against the City of Chicago (the City) and Carson, International, Inc. (Carson) for injuries he suffered when part of an exhaust apparatus fell from a ceiling and struck him while he was making a delivery to Carson's Restaurant at O'Hare International Airport.

The City leased the premises where the restaurant was located to Carson through a lease which provided that Carson was to obtain insurance naming the City as an additional insured. Paragraph 19 of the lease stated:

> "Lessee, at the expense of Lessee, shall keep in force during the term of this Lease, insurance *** for the protection of Lessor against all liabilities, judgments, costs, damages, and expenses which may accrue against, be charged to, or recovered from Lessor, by reason of damage to the property of, injury to or death of any person or persons on account of any matter or thing which may occur on the demised premises, in a policy or policies in the amount of Five Hundred Thousand Dollars ($500,000) with respect to any one person and One Million Dollars ($1,000,000) with respect to any one accident or disaster."

On September 29, 1989, the day of the accident, Carson possessed a policy of insurance with Liberty Mutual Insurance Company (Liberty Mutual). Pursuant to the terms of the lease, the policy included liability insurance for the City as an additional insured. Its "Other Insurance" clause, which pertained to additional insured parties, stated:

> "[O-2-]a. Where the applicable written agreement requires the insured to provide liability insurance on a primary, excess, contingent, or any other basis, this policy will apply solely on the basis required by such written agreement and Item 4. Other Insurance of SECTION IV of this policy will not apply, regardless of whether the person, organization, state or other political subdivision (for whom the insured had agreed in writing to provide such insurance) has available other valid and collectible insurance.

b. Where the applicable written agreement does not specify on what basis the liability insurance will apply, the provisions of Item 4. Other Insurance of SECTION IV of this policy will govern."

Under "Item 4. Other Insurance of SECTION IV," the policy provided that if other valid and collectible primary insurance was available to the insured, Liberty Mutual would share the loss through contribution by equal shares or by limits.

At the time of the accident, the City was the named insured on a policy issued by Transamerica Insurance Company (Transamerica). That policy provided coverage for bodily injury and property damage occurring at O'Hare International Airport.

After Bieda filed his negligence suit, the City filed a cross-claim against Carson for breach of contract and a third-party action against Liberty Mutual for determination of rights. Subsequently, Bieda's action was settled for $502,500, the City's cross-claim against Carson was dismissed, and the circuit court entered judgment for the City on its third-party action. The court found that paragraph 19 of the lease required Carson to provide primary insurance to the City and, therefore, paragraph O-2-a of the Liberty Mutual insurance policy required Liberty Mutual to provide full coverage and indemnification to the City, despite the existence of the Transamerica policy.

## I

Paragraphs O-2-a and O-2-b of the Liberty Mutual policy provided that Liberty Mutual's obligation to additional insured parties was dependent upon the nature of any written agreement between the policy's named insured and the additional insured parties. Thus, if the lease between Carson and the City required Carson to provide primary insurance, then Liberty Mutual would be solely liable for the City's losses, up to the amount of the stated coverage; if the lease did not specify the basis upon which liability insurance must apply, then Liberty Mutual would share any liability with the City's insurer through contribution.

■ Liberty Mutual and Carson contend that the circuit court erred in finding that paragraph 19 of the lease required Carson to obtain primary insurance. Primary insurance provides coverage that is not contingent on the exhaustion of an underlying policy; rather, liability attaches immediately upon the happening of an event that gives rise to the liability. *Empire Fire & Marine Insurance Co. v. Clarendon Insurance Co.*, 267 Ill. App. 3d 1022, 1028-29, 642 N.E.2d 79 (1994), *appeal denied*, 161 Ill. 2d 525, 649 N.E.2d 415 (1995); *Atlanta International Insurance Co. v. Checker Taxi Co.*, 214 Ill. App. 3d 440, 443, 574 N.E.2d 22 (1991), *appeal denied*, 141 Ill. 2d 535,

580 N.E.2d 108 (1991). Paragraph 19 required Carson to provide insurance that protected the City "against all liabilities, judgments, costs, damages, and expenses" by reason of property damage or personal injury resulting from any matter or thing which might occur on the demised premises. The lease did not state that coverage was to be contingent upon the exhaustion of any other policy.

■ Liberty Mutual and Carson contend that the lease did not require primary insurance because it did not contain the word "primary." However, such explicit language is not necessary; intent to require primary insurance can be determined from the policies, accompanying endorsements, and the lease insofar as it is incorporated into the insurance contract. *Truck Insurance Exchange v. Liberty Mutual Insurance Co.*, 102 Ill. App. 3d 24, 26, 428 N.E.2d 1183 (1981). Here, the lease, incorporated into Liberty Mutual's insurance contract by paragraph O-2-a, required Carson to acquire insurance against "all liabilities, judgments, costs, damages and expenses" and did not mention any other insurance policies. Such language indicates that Carson and the City intended primary insurance coverage.

Liberty Mutual and Carson cite *Deerfield Management Co. v. Ohio Farmers Insurance Co.*, 174 Ill. App. 3d 837, 529 N.E.2d 243 (1988), in support of their contention that the lease language did not require primary insurance. In that case, the relevant portion of the lease provided:

> "Lessee hereby indemnifies and holds Lessor and its agents and employees harmless from all claims and any costs, including attorneys' fees, related thereto, made by any person arising out of Lessee's use and operation of the leased premises. Lessee shall carry comprehensive public liability insurance with a policy limit of at least $500,000.00 per individual or occurrence. Such insurance shall be carried with a financially sound carrier and shall name Lessor as an additional insured." *Deerfield Management*, 174 Ill. App. 3d at 842-43.

Unlike the lease in this case, in *Deerfield Management* the lease required merely that insurance with a specific policy limit be purchased. Here, the lease specified that insurance was to be procured by Carson for the protection of the City against *all* liabilities. In *Deerfield Management*, the court resolved the issue by a comparison of the "Other Insurance" clauses of the two relevant policies and determined that those clauses unambiguously indicated that the lessor's insurance policy was primary and the lessee's policy provided excess coverage. *Deerfield Management*, 174 Ill. App. 3d at 844. Here, a comparison of the two policies is unnecessary. The language of the lease, requiring Carson to obtain insurance against all liabilities,

judgments, costs, and damages, controls the construction of the Liberty Mutual insurance policy, pursuant to paragraph O-2-a.

We deem such insurance protection to be primary in nature. Liberty Mutual was properly held responsible for full coverage to the City.

## II

■ Pursuant to the deductible in its Liberty Mutual policy, Carson is responsible for $500,000 of Bieda's settlement. Carson seeks to avoid a portion of that obligation.

In the circuit court, the City alleged that Liberty Mutual wrongfully refused to accept tender of defense for more than two years. The City sought to impose waiver and estoppel as to any policy defenses which Liberty Mutual might raise. As part of its judgment order, however, the circuit court stated that it did not need to resolve these issues.

On appeal, Carson contends that if Liberty Mutual is entitled to contribution from Transamerica but waived that right due to its refusal to accept tender, then Liberty Mutual should be liable for the proportion of the settlement which Transamerica would have been required to pay.

We have found, however, that Liberty Mutual is not entitled to contribution from Transamerica. As a result, Carson is not relieved of its deductible obligation.

For the foregoing reasons, the judgment of the circuit court is affirmed

Affirmed.

HARTMAN, P.J., and SCARIANO, J., concur.