GENERAL CASUALTY COMPANY OF ILLINOIS, Plaintiff-Appellant, v. RUSSELL E. JUHL *et al.*, Defendants-Appellees.

Fourth District    No. 4—95—0999

Argued July 16, 1996.—Opinion filed August 23, 1996.

Karen L. Kendall and John C. Mulgrew, Jr. (argued), both of Heyl, Royster, Voelker & Allen, of Peoria, and Gary S. Schwab, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant.

John W. Guntren, of Jerseyville, for appellees Russell E. Juhl and Thomas E. Juhl.

Robert C. O'Neal and R. Thomas Avery (argued), both of Riezman & Blitz, P.C., of St. Louis, Missouri, for appellees Gary K. Flatt and Sharon Flatt.

JUSTICE GREEN delivered the opinion of the court:

On November 21, 1994, plaintiff General Casualty Company of Illinois (General Casualty) brought suit in the circuit court of Greene County against defendants Russell E. Juhl, his son, Thomas E. Juhl, Gary K. Flatt, and Sharon Flatt. The complaint sought a declaratory judgment determining that a policy of automobile insurance issued by General Casualty to Russell did not cover any liability Russell had to the Flatts arising from a January 24, 1990, collision between trucks driven by Russell and Gary. The defendants filed answers and counterclaims seeking a declaration that coverage did exist. The parties made cross-motions for summary judgments.

On November 27, 1995, the circuit court entered an order granting summary judgment to defendants finding that General Casualty had coverage for any liability of Russell arising from the collision in excess of the $100,000 coverage of a policy issued by Western States Insurance Company (Western States) which covered the truck which Russell was driving at the time of the collision. The truck was owned by Thomas and his brother Robert Juhl. General Casualty has appealed. We reverse and remand with directions to enter a summary judgment declaring that General Casualty has no coverage for the collision involved.

The underlying facts before the court when it ruled upon the cross-motions for summary judgment were undisputed. Thus, a movant is entitled to summary judgment if those facts "show that *** [such a movant] is entitled to a judgment as a matter of law" (735 ILCS 5/2—1005(c) (West 1992)). The parties agree that if General Casualty had coverage, it was excess coverage. Actually, defendants' theory is based upon that coverage being excess coverage.

General Casualty's theory that it is entitled to judgment is based primarily upon provisions of its policy entitled "Duties After An Accident Or Loss," and which state in part as follows:

"A. We must be notified *promptly* of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

\* \* \*

(2) *Promptly* send us copies of any notices or legal papers received in connection with the accident or loss." (Emphasis added.)

General Casualty contends that it was not notified "promptly" of the January 20, 1990, collision as it received no notice of the collision until March 3, 1993. This notice was (1) three years and one month after the collision; (2) one year and seven months after Russell

received notice a claim would be made; (3) one year and one month after suit was brought by the Flatts against Russell; and (4) seven months after the Flatts, in answer to an interrogatory in the underlying case, stated that the value of their claim was $400,000.

Defendants maintain that because General Casualty was only an excess carrier as far as the instant collision was concerned, it was only entitled to notice a reasonable time after the insured became aware that the underlying claim was likely to exceed the coverage of the primary policy. Defendants rely principally upon the precedent of *Hartford Accident & Indemnity Co. v. Rush-Presbyterian-St. Luke's Medical Center*, 231 Ill. App. 3d 143, 595 N.E.2d 1311 (1992), and *Brotherhood Mutual Insurance Co. v. Roseth*, 177 Ill. App. 3d 443, 532 N.E.2d 354 (1988).

In *Hartford*, an insurer sought a declaratory judgment that neither a primary nor an excess coverage liability policy issued to a medical center covered a claim brought on behalf of a child allegedly brain damaged upon its birth at the medical center. As here, cross-motions for summary judgment were made. The birth took place in 1976. Suit was brought on behalf of the child against the medical center in August 1984. In April 1986, the insurer was notified that the primary and excess coverages were implicated. The second district held that no coverage existed on the primary policy but that the notice given was sufficient to impose coverage on the excess policy.

The *Hartford* court noted that in *Brownlee v. Western Chain Co.*, 74 Ill. App. 3d 804, 810, 393 N.E.2d 515, 519 (1979), the court had explained that an excess carrier does not usually need notice until it appears a claim will involve the excess provision and, accordingly, notice provisions in such policies "contemplate the exercise of some judgment on the part of the insured in evaluating the case" (*Hartford*, 231 Ill. App. 3d at 149, 595 N.E.2d at 1315). The *Hartford* excess policy stated notice was to be given "as soon as practicable," which would occur "whenever it appear[ed] that an occurrence [was] likely to" involve coverage. *Hartford*, 231 Ill. App. 3d at 147, 595 N.E.2d at 1314.

In *Hartford*, counsel for the damaged child had been slow in giving discovery as to the extent of damages until September 1985, in a pretrial memorandum, that counsel made a settlement demand of $10 million, which was $9 million in excess of the primary coverage. Then in March 1986, attorneys for the medical center interviewed a physician who had attended the birth and obtained information as to the severity of the child's damage. The *Hartford* court then concluded that the medical center had no reason to believe that excess coverage

was involved before that date and then decided that notice to the insurer of its excess coverage within a month from that date was sufficient. The trial court was affirmed.

*Roseth* concerned coverage on a homeowner's insurance policy. No question of excess coverage was involved. On April 23, 1983, at a birthday party for a son of the insured at the home of a friend, a gun in the hand of the son fired, hitting a guest in the arm. In early April 1985, the injured party called the insured stating that his medical insurance coverage was running out and wondered if the insured had any coverage that would be beneficial to him. The insured apparently informed the injured party of the existence of his policy and, within a few days the injured party had a complaint on file against the son, who was served with summons on February 23, 1985. Two days later, the insured informed her insurer of the service of the summons.

The *Roseth* court held that the insured and the injured party were entitled to a summary declaratory judgment that the homeowner's policy covered the shooting as the notice to the insurer was timely. The notice provisions of the policy required the insured to "promptly" give the insurer or its agent notice "if an insured becomes aware of anything that indicates there might be a claim under this policy." *Roseth*, 177 Ill. App. 3d at 446-47, 532 N.E.2d at 356. The insurer had argued that because the insured and her son were reasonably sophisticated people and knew that the injured party had substantial injuries, they should have given the insurance much earlier notice of the possible claim.

The *Roseth* court disagreed with the insurer, pointing out that the policy involved was not designated a liability policy but a homeowner's policy and the insured and her son would not likely understand that it covered the shooting incident. The *Roseth* court also noted that in *Barrington Consolidated High School v. American Insurance Co.*, 58 Ill. 2d 278, 282-83, 319 N.E.2d 25, 28 (1974), the supreme court had held that a school district had no duty to inform its liability carrier of every incident of every occurrence or accident which could conceivably result in liability but only those circumstances where a reasonable person would believe a claim would be made. *Roseth*, 177 Ill. App. 3d at 449, 532 N.E.2d at 358. Notably, in the instant case, unlike in *Roseth* and *Barrington*, the insurance policy involved was an automobile liability policy and the event giving rise to possible liability was a collision of automobiles, which is an event which is almost certain to give rise to a claim.

Most of the notice cases cited by General Casualty involve notice to *primary* carriers which were found to be tardy as a matter of law, thereby defeating coverage by the policy. In *American Family Mutual*

*Insurance Co. v. Blackburn*, 208 Ill. App. 3d 281, 284, 566 N.E.2d 889, 891 (1991), the policy required the insured give the insurer " 'prompt notice' " of a claim and to " 'promptly forward' " documents to the insurer. When the insured's father shot and killed his son, this court held that the father's liability policy had no coverage when notice was not given until four years after the shooting and more than three years after suit was filed. Under similar policy language in *United States Fidelity & Guaranty Co. v. Maren Engineering Corp.*, 82 Ill. App. 3d 894, 403 N.E.2d 508 (1980), a products liability policy was held as a matter of law to give no coverage when the insured manufacturer did not give notice to the insurer until two years after an injury occurred when a person was injured by a defective product manufactured by the insured.

The case of *Atlanta International Insurance Co. v. Checker Taxi Co.*, 214 Ill. App. 3d 440, 444, 574 N.E.2d 22, 25 (1991), cited by General Casualty, did involve an excess liability coverage policy which required immediate notice by the insured when an accident or occurrence " 'appears likely to result in liability' " under the policy. The court held that under the circumstances there a two-year delay between a collision and notification to the excess liability carrier was not unreasonable. The court explained that the situation of an excess carrier differed from that of the principal carrier in that the excess carrier did not have to prepare to defend until some likelihood of excess damages was shown. However, the opinion also indicated that had the excess insurer there "wanted immediate and 'automatic' notice of all accidents *** [it] easily could have inserted appropriate policy language to that effect." *Atlanta International*, 214 Ill. App. 3d at 444, 574 N.E.2d at 25.

■ In interpreting the instant General Casualty policy, we must give meaning to all of its terms. *Welborn v. Illinois National Casualty Co.*, 347 Ill. App. 65, 68, 106 N.E.2d 142, 143 (1952). To the extent that a policy of excess liability coverage indicates that reasonableness is an element in the time frame within which the insured must notify the insurer of likely liability, we agree with defendants that notice in regard to an excess claim may not need to be given as soon as notice to a primary carrier. However, as indicated in *Atlanta International*, an excess carrier can require that immediate notice must be given at the time of an occurrence or accident that could create liability of the insured.

■ Here, the insured was required to give notice "promptly." That would seem to require somewhat shorter notice than the words "as soon as practicable" in *Hartford* (231 Ill. App. 3d at 147, 595 N.E.2d at 1314) but, nevertheless, the word "promptly" as used here

and in *Roseth* (177 Ill. App. 3d at 446-47, 532 N.E.2d at 356) does have an element of reasonableness associated with it. As we have indicated, on August 6, 1991, Russell received a letter from counsel for the Flatts stating that a claim would be made. The letter requested that the matter be turned over to Russell's insurance carrier. Apparently not recognizing that the instant policy also had some coverage, Russell merely informed Western States. However, according to the undisputed deposition testimony of Thomas, in May 1992, Western States informed the Juhls that if the Flatts' damages exceed $100,000 Russell could be responsible. The Juhls then obtained counsel who entered his appearance on May 20, 1992.

On July 20, 1992, the Flatts answered an interrogatory indicating they were seeking damages in the sum of $400,000. Even with this information, the Juhls did not notify General Casualty of its possible liability until March 3, 1993. This notice was $7^{1}/_{2}$ months after receiving notice of a possible excess verdict and one year and one month after the filing of the underlying suit. Russell testified in a deposition that he did not give notice to General Casualty earlier because he did not think coverage beyond the $100,000 limit would be needed.

We determine that at least by July 20, 1992, when the Flatts indicated they were seeking damages in the sum of $400,000, the Juhls were charged with knowledge of the likelihood of an excess verdict and under a duty to so inform General Casualty. We hold that the ensuing $7^{1}/_{2}$ month delay was unreasonable as a matter of law and nullifies the coverage of the General Casualty policy. Substantial argument can be made that the unreasonable delay began at an earlier date but we need not examine that possibility.

Defendants point out that in *Hartford*, the court did not charge the medical center with knowledge of likely excess liability when the injured party filed a pretrial memorandum making a $10 million settlement demand, which was $9 million in excess of the coverage of the primary policy. Here, the language of the policy requiring the insured to proceed with "promptness" was slightly more demanding than the requirement of *Hartford* to proceed "as soon as practicable" (*Hartford*, 231 Ill. App. 3d at 147, 595 N.E.2d at 1314), and here the $400,000 figure came in the direct answer to an interrogatory. However, the main reason for the difference is that we respectfully disagree with *Hartford* in respect to when an insured is put on notice of the likelihood of an excess verdict. That decision seemingly requires, in a case where personal injuries are involved, the insured will not be charged with knowledge of likely excess coverage until sophisticated depositions are taken of the injured party and his physician. Such a rule encourages delay in notifying excess carriers.

No showing was made of any substantial damage to General Casualty because of the delay in notifying it, but damage is inherent in such a situation. *Blackburn*, 208 Ill. App. 3d at 291, 566 N.E.2d at 896-97. In any event, prejudice to the insurer is not ordinarily dispositive of the issue of whether a policy is voided for lack of notice. *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 311, 631 N.E.2d 1292, 1300 (1994).

An additional ground which General Casualty maintains defeats coverage of the instant policy in regard to the collision between vehicles driven by Russell and Gary arises from an exclusionary provision of the General Casualty policy. Because of our foregoing ruling in regard to the tardiness of notice to General Casualty, we need not consider this ground.

Accordingly, we reverse and remand to the circuit court of Greene County with directions to enter a summary judgment declaring that General Casualty has no coverage for the January 24, 1990, collision.

Reversed and remanded.

STEIGMANN and KNECHT, JJ., concur.