TEXTILE MACHINERY, INC., Plaintiff-Appellant, *v.* THE CONTINENTAL INSURANCE CO., Defendant-Appellee.

First District (4th Division)   No. 79-783

Opinion filed May 8, 1980.—Modified on denial of rehearing September 4, 1980.

Leon E. Lindenbaum, of Chicago (Walsh, Case & Coale, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini, Frank L. Schneider, and Jeffrey J. Asperger, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

On December 28, 1971, the defendant, Continental Insurance Company (Continental) undertook the defense of a personal injury lawsuit which had been filed against the plaintiff, their insured, Textile Machinery, Inc. (Textile). On January 6, 1972, a law firm retained by Continental filed an answer on behalf of Textile. Over 2½ years later, on September 26, 1974, Continental notified Textile that there was no policy coverage and tendered the defense back to Textile. Continental describes the undertaking of the defense over that period of time as simply a mistake. Textile brought this declaratory judgment action seeking a declaration that the policy applies and insures Textile or, in the alternative, that Continental has waived its right to deny coverage under the policy. The trial court granted summary judgment to Continental and denied summary judgment to Textile. The only issue on appeal is whether Continental is estopped from denying coverage under the policy.

Textile argues that it was induced to surrender the right to conduct its own defense because Continental assumed the defense without a reservation of rights and Continental thus is estopped from denying policy coverage. Continental responds that prejudice or detriment is an essential prerequisite to estoppel and that there is no factual basis to support a plea of estoppel. Both parties' contentions are based principally on two cases, *Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 263

N.E.2d 823, and *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.

In *Varkalis*, Kenneth Robinson was insured by Gibraltar Insurance Company (Gilbraltar) against any legal liability incurred for injuries he caused. However, the policy excluded injuries intentionally caused. On May 13, 1961, Robinson caused the death of Veronica Varkalis by pushing her out of a car and repeatedly driving over her body. On February 2, 1962, Robinson pleaded guilty to murder and was sentenced to the penitentiary for not less that 15 nor more than 30 years. On May 19, 1962, the administrator of the estate of Veronica Varkalis filed an action for wrongful death. One of the counts of that complaint alleged that Robinson wilfully caused the death. Almost two years later, on February 13, 1964, Robinson's attorney wrote to Gibraltar advising them that no appearance had been filed on Robinson's behalf in the suit. On March 19, 1964, counsel retained by Gibraltar filed an appearance on behalf of Robinson. Within a month, retained counsel filed a motion to dismiss the Varkalis complaint against Robinson. That motion was denied. Almost 16 months later, on July 13, 1965, retained counsel advised Robinson that Gibraltar would provide a defense but they would not provide any coverage. In holding that Gibraltar had waived any policy defense for liability the Illinois Supreme Court said:

> "Under such circumstances we believe it clear that plaintiff has waived its right to assert policy defense. As observed by the Appellate Court in *Apex Mutual Insurance Co. v. Christner*, 99 Ill. App. 2d 153, 161, 'It is well settled that assumption of the insured's defense constitutes a waiver by the insurer of all questions of policy coverage. [Citations.] If, therefore, in spite of doubts as to coverage, the insurer elects to take over the insured's defense, it will afterwards be estopped from denying its own liability under the policy.' [Citation.] If plaintiff had doubts about its liability under the policy in question it could have easily given Robinson prompt notice that it would defend the wrongful death action under a reservation of rights, or it could have refused to defend and instituted a declaratory judgment action seeking to relieve it of any responsibility to Robinson." 46 Ill. 2d 481, 487, 263 N.E.2d 823, 827.

The court also noted that while the attorneys retained by Gibraltar were defending Robinson they "acted on behalf of Robinson as though no questions of policy coverage were involved, thus clearly causing him to wholly rely for his defense on the efforts of plaintiff." 46 Ill. 2d 481, 488, 263 N.E.2d 823, 827.

In *Peppers*, St. Paul Fire & Marine Insurance Company (St. Paul) insured Robert Peppers against legal liability for injuries he caused, but

excluded intentionally caused injuries. Peppers shot and wounded James Mims. After a personal injury action was filed by Mims alleging negligence, assault and wilful conduct in firing a shotgun at him, Peppers' personal attorney filed an appearance and a motion to dismiss. Peppers' personal attorney sent a copy of the complaint to St. Paul requesting St. Paul to defend Peppers. Almost seven months later attorneys retained by St. Paul filed an appearance and answer on behalf of Peppers. Within a month of that appearance and answer the attorneys retained by St. Paul withdrew their appearance and answer. The motion to dismiss by Peppers' personal attorney was reinstated. In finding that the insurance company was not estopped from asserting a defense of noncoverage the supreme court noted that generally an insurer is estopped when the insurer undertakes the defense of an action against the insured. However, "it is also the general rule that the undertaking must result in some prejudice to the insured." (*Peppers*, 64 Ill. 2d 187, 195, 355 N.E.2d 24, 29.) The court stated that in its previous opinion in *Varkalis* the insurer had exclusively represented the insured and the insurer clearly caused the insured to wholly rely for his defense on the efforts of the insurer.

Continental argues that there is no factual basis to support a claim of estoppel. Textile contends it suffered prejudice when it wholly relied on the insurer's defense without a reservation of rights.

The underlying lawsuit alleged that Textile was responsible for personal injuries on theories of negligence and strict liability in tort for the sale of a machine without sufficient guards or safety devices. Textile's president testified that he knew that he did not have products liability coverage but believed that the coverage he did have, comprehensive general liability, covered the occurrence because he did not design or build the machine. The broker who placed the insurance with Continental submitted the complaint to Continental as a matter of normal procedure and was surprised Continental undertook the defense. Textile's personal attorney sent the papers to Continental stating that the policy appears to cover the claims alleged in the complaint. Textile's personal attorney requested and received from the law firm retained by Continental copies of the pleadings which were filed on behalf of Textile. The last pleadings he received were on July 7, 1972, over two years before Continental notified Textile that there was no coverage. The only other contact between Textile's personal attorney and counsel retained by Continental was when Textile was advised that the underlying claim was in excess of the coverage and an offer was extended to Textile to have its attorneys participate in the defense. There is no indication in the record that they did so. When the defense was tendered to Textile on September 26, 1974, the law firm retained by Continental continued to represent Textile. The

stipulation by the parties indicates that they do not question the representation that they received.

Continental relies on the *Peppers* statement that the insured must show it has been prejudiced before estoppel principles will be applied. Although prejudice will not be conclusively presumed merely from the entry of an appearance and assumption of the defense (*Peppers*, 64 Ill. 2d 187, 196, 355 N.E.2d 24, 29), the facts here are at least as clear as those in *Varkalis* in showing that the insured was induced to surrender his right to control his own defense and Continental is therefore estopped to deny coverage. Textile was never represented in the suit by its own attorney. The last contact Textile's personal attorney had with the attorneys retained by Continental was over two years before notice was received that there would be no coverage. The mere fact that Textile received an offer to participate in the defense due to an excess coverage problem does not militate against the conclusion that Textile relied on Continental for the defense. Textile immediately looked to Continental for its defense when it received the complaint in the underlying action. Continental had the complaint in its possession when it entered its appearance and it was not until more than 2½ years later that Continental notified Textile of its denial of coverage. Textile's right to control its own defense is not affected by its lack of complaints about the representation it received from counsel retained by Continental.

The summary judgment in favor of Continental and against Textile is reversed and the cause is remanded to the trial court to enter summary judgment in favor of Textile.

Reversed and remanded.

LINN, P. J., and ROMITI, J., concur.