AMERICAN STATES INSURANCE COMPANY, Plaintiff-Appellee, v. NATIONAL CYCLE, INC., Defendant-Appellant (Paul Richard Campbell, Defendant).

First District (1st Division)   No. 1—92—1260

Opinion filed March 28, 1994.

Widman, Goldberg & Zulkie, Ltd., of Chicago (Joel L. Widman, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Mary C. O'Connor, Lisa Marco Kouba, Jennie R. Lipowich, and Imelda Terrazino, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, American States Insurance Co., brought a declaratory judgment action against defendants, National Cycle, Inc. (National Cycle), and Paul Richard Campbell (Campbell), seeking a declaration that it had no duty to defend or indemnify National Cycle for the claims asserted by Campbell due to National Cycle's breach of the notice requirement of an insurance policy. Plaintiff then filed a motion for summary judgment. The trial judge granted plaintiff's motion on the grounds that National Cycle had given "inadequate notice" and, as a result, "there is no question prejudice occurred."

Allegedly, on September 4, 1987, Campbell was seriously injured when he rode his motorcycle through a pothole in a Chicago street and then slid into a parked car. On August 31, 1988, Campbell filed a lawsuit against the City of Chicago. On September 7, 1988, Campbell filed an amended complaint naming as additional defendants Ace Cycle World, Inc. (Ace Cycle), and National Cycle. National Cycle buys, sells, and services motorcycles and motorcycle accessories, and Ace Cycle installed a certain accessory on Campbell's motorcycle. National Cycle was served with the amended complaint and summons on September 16, 1988.

National Cycle apparently retained an attorney and proceeded to defend itself. On February 6, 1990, the trial court issued a good-faith

finding of settlement between Campbell and Ace Cycle, dismissed Ace Cycle from the lawsuit and ordered that the action continue solely against National Cycle. Subsequently, on June 7, 1990, the trial court allowed Campbell leave to voluntarily dismiss his lawsuit against National Cycle without prejudice. One week later, on June 13, 1990, Campbell refiled his lawsuit against National Cycle and, on June 15, 1990, National Cycle was served with Campbell's refiled complaint. On that same date, National Cycle's attorney sent notice of the lawsuit and tendered the defense of the action to plaintiff.

Plaintiff retained counsel to defend National Cycle and filed its appearance on August 7, 1990. Subsequently, 3$^1$/$_2$ months later, on November 21, 1990, plaintiff sent National Cycle a "reservation of rights" letter in which it expressly reserved all rights and defenses under the policy. Specifically, plaintiff asserted that it may not be obligated "to furnish you with coverage or pay any judgment therein as a result of your failure to abide by the terms and conditions of the policy by providing late notice and failing to notify of the previous suit filed in this matter."

Plaintiff is National Cycle's excess liability insurance carrier. The portion of the umbrella liability policy issued by plaintiff to National Cycle which is relevant to this appeal is paragraph D. Paragraph D, titled "Notice of Occurrence," provides:

> "Upon the happening of an occurrence *reasonably likely to involve the company hereunder*, written notice shall be given *as soon as practicable* to the company or any of its authorized agents. Such notice shall contain particulars sufficient to identify the Insured and the fullest information obtainable at the time. The Insured shall give like notice of any claim made on account of such occurrence." (Emphasis added.)

On April 10, 1991, plaintiff filed a declaratory judgment action seeking a declaration that it was not obligated to defend or indemnify National Cycle due to National Cycle's breach of the policy's notice provision in paragraph D.

In National Cycle's answer to plaintiff's complaint for declaratory judgment, National Cycle admitted that it first notified plaintiff of this *second* lawsuit on June 15, 1990. Additionally, National Cycle admitted that at no time prior to June 15, 1990, had it informed plaintiff of either the *original* lawsuit or of the occurrence on September 4, 1987, of which Campbell complained. Plaintiff then moved for summary judgment solely on the ground that National Cycle breached the notice provision of the policy. National Cycle responded that (1) plaintiff was estopped to deny coverage because it had undertaken National Cycle's defense without a reservation of

rights, (2) the timeliness of its notice to plaintiff was a question of fact, and (3) plaintiff was not prejudiced.

On November 7, 1991, at the hearing on plaintiff's summary judgment motion, the trial judge determined that there was no question but that National Cycle did not send notice to plaintiff until June 15, 1990. Additionally, the judge concluded that plaintiff was clearly prejudiced "because a case was settled apparently with [Ace Cycle] who was originally a co-defendant in the case *** with no notice, as far as I can tell, to [plaintiff,] the excess carrier." Finally, the judge found that plaintiff did not waive its rights to contest coverage by filing a reservation of rights several months after it filed an appearance in the case. The judge expressed his concern, however, that notice to an additional primary carrier may have constituted notice to the plaintiff. Therefore, the judge set a briefing schedule in order for the parties to address the issue of additional primary policies. The judge also reopened discovery in order to allow National Cycle to take the deposition of its president, Barry Willey.

Subsequently, in its surreply in opposition to plaintiff's motion for summary judgment, National Cycle asserted that Willey's testimony elicited during a deposition on December 6, 1991, raised a question of fact "regarding the nature, extent, and adequacy of notice which must preclude Plaintiff's Motion for Summary Judgment." Specifically, based upon Willey's deposition testimony, National Cycle asserted that its first notice of the occurrence was when it received the summons and complaint in September 1988, and that within three to six months of that service it notified Bill Matsock, an agent of the plaintiff. National Cycle maintained further that Willey testified that he had several conversations with Matsock regarding the status of the case. National Cycle attached Willey's affidavit in which he averred that he had sent a copy of the summons and complaint to Matsock by certified mail, return receipt requested in 1988.

On March 9, 1992, at the hearing to reconsider plaintiff's motion for summary judgment, National Cycle asserted that Willey's uncontradicted affidavit raised a question of fact as to when plaintiff was notified. Plaintiff objected, arguing that the court had already made a ruling on the question of notice and that the only issue before the court was whether National Cycle had given notice to any additional primary carriers. Plaintiff also asserted that National Cycle's argument was improper in light of the fact that it had already judicially admitted that notice had not been given to plaintiff until June 15, 1990. Moreover, plaintiff argued that the proper time to contest this issue was at the time it had filed its motion for summary judgment and that once a party admits a fact such as late notice it

cannot "come back and change [its] mind." Plaintiff asserted that to allow such action "constitutes nothing more than an invitation to commit perjury."

At the conclusion of the hearing, the judge granted plaintiff's motion for summary judgment on the ground that National Cycle had given inadequate notice "some two and a half years after the fact" in June 1990, and that plaintiff was clearly prejudiced as a result. National Cycle filed a timely notice of appeal.

Before addressing the specific issues raised by National Cycle on appeal, we must first determine whether a question of fact exists as to when National Cycle first gave notice to plaintiff. The answer to this question will have an effect on the ultimate disposition of the remaining issues in this case.

■ Summary judgment should only be granted if all the pleadings, affidavits, and other evidence on file viewed in the light most favorable to the nonmovant show that there is no question of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1992)); *Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 730, 523 N.E.2d 30, 33.) National Cycle asserts that Willey's affidavit is uncontroverted and establishes a question of fact on the notice issue. According to Willey's affidavit, three to six months after receiving the summons and complaint in the original lawsuit in 1988, he sent a copy to Bill Matsock, an agent of plaintiff. Plaintiff responds that National Cycle has waived this argument by raising it for the first time on appeal in its reply brief. Plaintiff also asserts that National Cycle admitted in its answer to plaintiff's complaint for declaratory judgment that notice was not given until June 15, 1990, and that National Cycle cannot now contest that fact. Both of plaintiff's arguments have merit.

Supreme Court Rule 341 (134 Ill. 2d R. 341) governs the form and substance of appellate briefs. According to Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), the appellant's brief must contain an argument section and "[p]oints not argued are waived and *shall not be raised in the reply brief, in oral argument, or on petition for rehearing.*" (Emphasis added.) National Cycle did not argue in its initial brief that Willey's affidavit raised a question of fact on the notice issue and thus precluded summary judgment. Consequently, National Cycle waived this argument.

Moreover, National Cycle cannot now argue that it gave timely notice of the occurrence and the original lawsuit in 1988 because it has already made a binding judicial admission to the contrary. Plaintiff's amended complaint for declaratory judgment contained

the following allegations which National Cycle admitted, without qualification, in its answer:

"11. NATIONAL CYCLE, INC., by its attorneys, first provided AMERICAN STATES INSURANCE COMPANY with notice of the second *CAMPBELL* lawsuit in correspondence dated June 15, 1990. (Attached hereto and incorporated herein as Exhibit 'H' is a true and accurate photocopy of the June 15, 1990 correspondence).

12. At no time prior to the correspondence dated June 15, 1990, did NATIONAL CYCLE, INC. advise AMERICAN STATES INSURANCE COMPANY of either the original *CAMPBELL* lawsuit or of the incident of which CAMPBELL complained that occurred on or about September 4, 1987."

"It is axiomatic that an admission in an answer constitutes a formal judicial admission and is conclusive on the person making it." (*Board of Education of Township High School District No. 205 v. Faculty Association of District 205* (1983), 120 Ill. App. 3d 930, 935, 458 N.E.2d 1017, 1020.) As such, a party who admits a fact adverse to his or her claim cannot then contradict that admission by introducing subsequent contradictory deposition testimony or by filing contradictory affidavits or by adopting any other inconsistent evidence produced by other witnesses. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 568-69, 390 N.E.2d 60, 64.) " '[A] counter-affidavit does not place in issue material facts which had previously been removed from contention by a party's deliberate and unequivocal admissions under oath.' " (*Tom Olesker's*, 71 Ill. App. 3d at 568-69, 390 N.E.2d at 64, quoting *Fountaine v. Hadlock* (1971), 132 Ill. App. 2d 343, 347, 270 N.E.2d 222, 225.) This rule reflects the policy that, once a party admits a fact which is within his personal knowledge, to allow him or her to contradict that testimony later in the proceedings would be an invitation to commit perjury. (*Tom Olesker's*, 71 Ill. App. 3d at 569, 390 N.E.2d at 64-65.) Consequently, National Cycle's specific admission that the first notice it gave to plaintiff was on June 15, 1990, is binding and it may not now disclaim that fact. Thus, Willey's affidavit does not create a question of fact which would preclude summary judgment.

National Cycle's first contention is that plaintiff waived its right to assert any policy defenses because it undertook to defend National Cycle without a reservation of rights. Plaintiff, on the other hand, asserts that it did not expressly or impliedly waive its rights and that its reservation of rights letter 3½ months after notice was timely.

■ Waiver consists of "the intentional relinquishment of a known right" and may be express or implied from the insurer's acts, words,

conduct, or knowledge. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 499, 475 N.E.2d 872, 878.) In the absence of a nonwaiver agreement, commonly referred to as a "reservation of rights," an insurer waives all questions of policy coverage when it assumes an insured's defense. (*Apex Mutual Insurance Co. v. Christner* (1968), 99 Ill. App. 2d 153, 161-62, 240 N.E.2d 742, 747.)

> "[A]n insurer may waive a policy defense by continuing under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts in question giving rise to the defense. [Citations.] If the insurance company is fully advised of the facts bearing on its policy defense and does not then insist on noncoverage but recognizes the continued validity of the policy ***, an intention to waive the policy defense would follow." *Kenilworth Insurance Co. v. McDougal* (1974), 20 Ill. App. 3d 615, 620, 313 N.E.2d 673, 677.

■ An insurer who wishes to reserve his or her rights under a policy must notify the insured "without delay" or "with reasonable promptness." (Emphasis omitted.) (*Apex*, 99 Ill. App. 2d at 169, 240 N.E.2d at 751.) A long delay without explanation in asserting a policy defense is an element in determining the reasonableness of an insurer's conduct, but alone normally not enough to constitute a waiver. (*Kenilworth*, 20 Ill. App. 3d at 620, 313 N.E.2d at 677.) In determining whether a delay is reasonable, it is implicit "that all the time between the learning of the breach and the notification to the insured cannot be considered as 'delay,' because within that period some part of the time—reasonable in relation to the status of the pending litigation—must be allowed to the insurer to evaluate its position and to determine what route it will follow." (*Apex*, 99 Ill. App. 2d at 170, 240 N.E.2d at 751.) Moreover, as a general rule, a waiver of rights will not be found when a party "is ignorant of the existence of such rights." (*Kenilworth*, 20 Ill. App. 3d at 620, 313 N.E.2d at 677.) Finally, since waiver is based upon the unilateral conduct of the insurer, "[p]rejudicial reliance by the insured is not required." *Western Casualty*, 105 Ill. 2d at 499, 475 N.E.2d at 878.

■ In the instant case, National Cycle does not argue that plaintiff expressly waived its policy defenses, and, under this record, we find no evidence of such a waiver. National Cycle attempts to establish plaintiff's waiver solely by relying upon the fact that plaintiff did not send a reservation of rights letter until $3^1/2$ months after its retained counsel filed an appearance on behalf of National Cycle. We do not believe that this fact alone is sufficient to establish an implied waiver and agree with the trial court that plaintiff did not waive its policy defenses.

Plaintiff did not know, nor in the exercise of ordinary diligence could it have known, of the facts giving rise to its defense at the time it filed its appearance in this case. National Cycle never notified plaintiff of the previous lawsuit or settlement. National Cycle's attorney forwarded to plaintiff a copy of the summons and complaint in the refiled lawsuit, however, on the same day that it was served. The refiled lawsuit contained the same allegations as the complaint in the original lawsuit and made no reference to the fact that the suit previously had been voluntarily dismissed. Thus, as far as plaintiff knew, National Cycle had given prompt notice of the claim on the same day it was served.

Additionally, a party cannot assert a policy defense until it is aware of the facts giving rise to that defense (*Illinois Insurance Guaranty Fund v. Lockhart* (1987), 152 Ill. App. 3d 603, 609, 504 N.E.2d 857, 861) and, as stated above, a party will not be found to have waived rights of which it was ignorant. (*Kenilworth*, 20 Ill. App. 3d at 620, 313 N.E.2d at 677.) Plaintiff was unaware of the facts bearing on its policy defense when it filed its appearance and an intention to waive the defense, therefore, does not follow. *Kenilworth*, 20 Ill. App. 3d at 620, 313 N.E.2d at 677.

Moreover, a long delay in asserting a policy defense without explanation is not enough, alone, to constitute waiver. (*Kenilworth*, 20 Ill. App. 3d at 620, 313 N.E.2d at 677.) Furthermore, in this case, the entire $3^1/_2$ months cannot be considered "delay." At some point during the three-month period, on its own initiative, plaintiff discovered the facts giving rise to its defense. A portion of the time from the moment of discovery until the reservation of rights must then be "allowed to the insurer to evaluate its position and to determine what route it will follow." (*Apex*, 99 Ill. App. 2d at 170, 240 N.E.2d at 751.) Consequently, in light of the factual posture of this case, we do not believe that $3^1/_2$ months from the date counsel filed an appearance on behalf of National Cycle was an unreasonable delay and fail to see how plaintiff's conduct constituted an "intentional relinquishment of a known right."

National Cycle's second contention is that plaintiff is estopped from asserting any policy defenses because its "unreasonable delay" in reserving its rights induced National Cycle to detrimentally rely upon plaintiff for its defense. Plaintiff, on the other hand, asserts that National Cycle has failed to show any actual prejudice.

■ As under the doctrine of waiver, an insurer may be estopped from asserting any policy defenses it may have if it does not reserve its rights under the policy. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 195, 355 N.E.2d 24, 29.) However, unlike waiver,

estoppel may be an involuntary relinquishment of rights and requires prejudicial reliance by the insured. (*Western Casualty*, 105 Ill. 2d at 499-500, 475 N.E.2d at 879.) Ordinarily, the insured asserts prejudice on the ground that he surrendered the right to control his defense (*Peppers*, 64 Ill. 2d at 196, 355 N.E.2d at 29) and completely relied for his entire defense upon the insurer. (*Gibralter Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 488, 263 N.E.2d 823, 827; *Apex*, 99 Ill. App. 2d at 161, 240 N.E.2d at 747.) However, "[p]rejudice will not be conclusively presumed from the mere entry of appearance and assumption of the defense." (*Peppers*, 64 Ill. 2d at 196, 355 N.E.2d at 29.) The insured has the burden of establishing prejudicial reliance "by clear, concise, and unequivocal evidence." *Old Mutual Casualty Co. v. Clark* (1977), 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705.

The two leading cases in Illinois on this issue are *Gibralter Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 263 N.E.2d 823, and *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24. In *Varkalis*, the insured was convicted of murder. In March 1962, a wrongful death action was filed against the insured. The insured was served with summons in April 1962, but he never forwarded the summons to his insurer. The insurer finally received notice of the claim in February 1964, when the insured's personal counsel advised the insurer that no appearance had been filed on the insured's behalf in the wrongful death action. In March 1964, the insurer filed an appearance on behalf of the insured and an answer. Finally, in July 1965, the insurer advised the insured that it was reserving its rights under the policy.

The *Varkalis* court held that the insurer was estopped by its conduct from denying liability under the policy. The *Varkalis* court reasoned that the insurer knew the occurrence date was in May 1961 and had enough information to file an answer in the wrongful death action the same day the appearance was filed. Thus, the court asserted that the insurer "will not be heard to say that it was unaware of the possible existence of the policy defense at the time it assumed the representation of its insured." (*Varkalis*, 46 Ill. 2d at 487.) The court concluded that during the 16 months it represented the insured, the insurer acted "as though no questions of policy coverage were involved, thus clearly causing [the insured] to wholly rely for his defense on the efforts of plaintiff." *Varkalis*, 46 Ill. 2d at 488. See also *National Ben Franklin Insurance Co. v. Davidovitch* (1984), 123 Ill. App. 3d 88, 462 N.E.2d 696 (following the *Varkalis* reasoning, the court found prejudice where insured was not represented in the litigation by his own attorney and relied entirely upon the insurer for his defense for 15 months before the insurer asserted a

policy defense); *Textile Machinery, Inc. v. Continental Insurance Co.* (1980), 87 Ill. App. 3d 154, 409 N.E.2d 1 (following *Varkalis*, the court found estoppel where the insured surrendered control of his defense to the insurer, the insured's personal attorney did not participate in the suit, and the insurer informed the insured for the first time of its denial of coverage $2^1/2$ years after it filed its appearance).

On the other hand, in *Peppers*, the court found no prejudice when the insurer withdrew after representing the insured for 24 days. The *Peppers* court noted that the insured had been represented by his own attorney in the action for two months before the insurer was notified and he apparently never withdrew his appearance. The court reasoned that there was no indication in the record that the insured was not at all times represented by his own counsel or that in reliance upon the attorneys hired by the insurer he was induced to surrender the right to conduct his own defense. Consequently, the court concluded that the trial judge's determination that there was no estoppel was not against the manifest weight of the evidence. See also *Mid-State Savings & Loan Association v. Illinois Insurance Exchange, Inc.* (1988), 175 Ill. App. 3d 265, 529 N.E.2d 696 (following the reasoning in *Peppers*, the court held that there was no estoppel where the insurer reserved its rights six months after filing its appearance on behalf of the insured because there was no evidence that the insurer's conduct was defective or that the delay in reserving its rights was prejudicial); *Old Mutual*, 53 Ill. App. 3d 274, 368 N.E.2d 702 (mere allegation of prejudice as a result of surrendering defense to insurer insufficient to invoke estoppel absent proof of harm); *Royal Globe Insurance Co. v. Tutt* (1982), 108 Ill. App. 3d 69, 438 N.E.2d 943 (following *Peppers*, the court held that prejudice will not be conclusively presumed and there was no estoppel in the absence of clear, concise, and unequivocal proof).

■ The instant case falls closer on the spectrum to *Peppers* than to *Varkalis*. Plaintiff was unaware at the time it entered its appearance of the initial filing of the lawsuit and the events leading up to the voluntary dismissal. Thus, plaintiff was unaware of the facts upon which it could base its policy defense. Additionally, National Cycle's personal attorney had an appearance on file in this case and had represented National Cycle for a year and a half in the initial lawsuit before plaintiff was tendered the defense. Moreover, National Cycle's personal attorney apparently actively represented it after the lawsuit was refiled. Plaintiff attached to its response brief copies of documents which show that National Cycle's personal attorney filed a third-party complaint and a motion for summary judgment on behalf of his client in relation to the occurrence in this

action during the pendency of this suit. Therefore, it is clear that National Cycle did not rely exclusively upon counsel hired by plaintiff for its defense during the three months between the appearance and the reservation of rights.

Finally, National Cycle does not complain that plaintiff's representation was defective in any way. It has not offered any evidence to show how it was injured by reason of plaintiff's alleged delay in reserving its rights. There is nothing in the record other than National Cycle's bold assertion that by surrendering its defense it was prejudiced. This is merely a legal conclusion and not a statement of fact. See *Mid-State*, 175 Ill. App. 3d at 272, 529 N.E.2d at 700.

Although the issue of whether an insured has been prejudiced is generally a question of fact for a jury (*Western Casualty*, 105 Ill. 2d at 500, 475 N.E.2d at 879), it is properly decided by the judge on a motion for summary judgment if there is no factual basis from which a jury could find prejudice. (See *Textile Machinery*, 87 Ill. App. 3d at 156, 409 N.E.2d at 3; *Old Mutual*, 53 Ill. App. 3d at 280, 368 N.E.2d at 706.) Consequently, we hold that the mere allegation of prejudicial reliance as a result of surrendering its defense is insufficient for National Cycle to establish prejudice by clear, concise, and unequivocal evidence. Thus, plaintiff is not estopped from asserting its policy defense of lack of timely notice.

National Cycle's final contention is that the notice provision of the insurance policy only requires that it give notice of occurrences or claims as soon as it is "reasonably likely" that the particular excess policy will be implicated. As such, National Cycle asserts that the trial judge applied the incorrect standard in determining the reasonableness of notice. Additionally, National Cycle maintains that whether notice is reasonable is a question of fact for a jury and not properly decided on a motion for summary judgment. Plaintiff, on the other hand, argues that National Cycle failed to give notice "as soon as practicable" as a matter of law and that it was irreparably prejudiced as a result.

■ Paragraph D of the insurance policy provides in pertinent part:

> "Upon the happening of an occurrence *reasonably likely to involve the company hereunder*, written notice shall be given *as soon as practicable* to the company or any of its authorized agents. Such notice shall contain particulars sufficient to identify the Insured and the fullest information obtainable at the time. The Insured shall give *like notice* of any claim made on account of such occurrence." (Emphasis added.)

The purpose of a notice requirement in an insurance policy is "to

enable the insurer to make a timely and thorough investigation of the insured's claim." (*Allstate Insurance Co. v. Carioto* (1990), 194 Ill. App. 3d 767, 780, 551 N.E.2d 382, 389.) Thus, notice provisions are not mere "technical requirement[s]," but rather "valid prerequisite[s] for coverage." (*Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, 581, 485 N.E.2d 1281, 1286.) Whether notice was reasonable depends upon the circumstances of the case. (*Atlanta International Insurance Co. v. Checker Taxi Co.* (1991), 214 Ill. App. 3d 440, 445, 574 N.E.2d 22, 25.) Moreover, prejudice to the insurer is merely one relevant factor to consider when determining whether notice was reasonable (*Sisters of Divine Providence v. Interstate Fire & Casualty Co.* (1983), 117 Ill. App. 3d 158, 162, 453 N.E.2d 36, 39), and lack of prejudice will not dispense with the insured's obligation to give reasonable notice. (*National Bank v. Winstead Excavating* (1981), 94 Ill. App. 3d 839, 842, 419 N.E.2d 522, 525.) Of course, if the insurer can show prejudice then it is more likely that the notice it received was not reasonable. *Hartford Accident & Indemnity Co. v. Rush-Presbyterian-St. Luke's Medical Center* (1992), 231 Ill. App. 3d 143, 151, 595 N.E.2d 1311, 1316.

■ Notice provisions in *excess* insurance policies, however, generally do not require immediate notice of an occurrence as do provisions in primary policies. (*Atlanta International*, 214 Ill. App. 3d at 443, 574 N.E.2d at 25.) Excess insurers are not interested in every accident, " 'but only in those that may be serious enough to involve it.' " (*Brownlee v. Western Chain Co.* (1979), 74 Ill. App. 3d 804, 810, 393 N.E.2d 515, 519, quoting *Greyhound Corp. v. Excess Insurance Co.* (5th Cir. 1956), 233 F.2d 630, 634.) Since excess coverage is contingent on exhaustion of primary or underlying policies, excess insurers generally do not require notification of occurrences until the excess policy is reasonably likely to be implicated. (*Atlanta International*, 214 Ill. App. 3d at 443, 574 N.E.2d at 25.) Consequently, insurance policies for excess coverage generally grant the insured some discretion in evaluating the case. *Brownlee*, 74 Ill. App. 3d at 810, 393 N.E.2d at 519.

■ In the instant case, plaintiff is an excess insurer and its policy's notice provision requires that reasonable notice be given "[u]pon the happening of an occurrence *reasonably likely to involve the company hereunder.*" (Emphasis added.) This language is substantially similar to standard language in excess insurance policies and has been interpreted to mean that the insured has some *discretion* as to when to notify the insurer. (See *Hartford*, 231 Ill. App. 3d at 150, 595 N.E.2d at 1315; *Atlanta International*, 214 Ill. App. 3d at 444, 574

N.E.2d at 25; *Greyhound*, 233 F.2d at 634.) In other words, the insured is not required to give notice immediately upon the happening of the occurrence, but rather as soon as the excess policy is reasonably likely to be implicated.

The trial judge here determined that notice was late because it was sent to plaintiff $2^1/2$ years after the occurrence. This would be the standard under a primary or underlying policy. In this case, however, the proper question was whether National Cycle gave notice to plaintiff within a reasonable time after it determined that it was reasonably likely that the excess policy would be implicated. Although the trial judge did not consider at what point National Cycle should have been aware that the excess insurance policy was reasonably likely to be implicated, we believe that the facts and circumstances of this case make it clear that National Cycle's notice to plaintiff was untimely and that such a specific determination is unnecessary.

Campbell named Ace Cycle and National Cycle as defendants in his lawsuit on September 7, 1988. On February 6, 1990, 17 months later, the trial judge entered a good-faith finding of settlement between Ace Cycle and Campbell. Campbell then proceeded solely against National Cycle until June 7, 1990, when he voluntarily dismissed his lawsuit without prejudice. Campbell refiled his lawsuit against National Cycle on June 13, 1990, and, upon being served with the refiled complaint on June 15, 1990, National Cycle tendered its defense to plaintiff. The refiled complaint was identical to the complaint filed in the original action.

National Cycle clearly had actual knowledge that the excess policy might be implicated on February 6, 1990, when Campbell and Ace Cycle settled. Thus, National Cycle failed to notify plaintiff for four months after it knew plaintiff's policy was implicated. We can assume, therefore, that National Cycle must have known before February 6 that it was "reasonably likely" that the excess policy would be implicated.

Additionally, plaintiff obviously was severely prejudiced by National Cycle's conduct in this case. Plaintiff was not notified of the initial lawsuit and thus was not aware of nor did it participate in some 17 months of discovery. As a result, it was unable to object to the settlement with Ace Cycle which, due to the good-faith finding by the trial court, precluded National Cycle from later seeking contribution. Consequently, although the *exact moment* when National Cycle became aware that the excess policy was reasonably likely to be implicated was not pinpointed by the trial judge, it is clear from the severe prejudice which resulted to plaintiff that notice was not given

with reasonable promptness. Whether the insured acted unreasonably is normally a question of fact, but where the facts are undisputed, it is an issue of law for the court. (*Hartford*, 231 Ill. App. 3d at 150-51, 595 N.E.2d at 1316.) We believe that this case was properly dismissed on plaintiff's motion for summary judgment.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County granting plaintiff's motion for summary judgment is affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.