# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Ahle v. D. Chandler, Inc.*, 2012 IL App (5th) 100346

---

| | |
|---|---|
| Appellate Court Caption | DAVID AHLE, Plaintiff-Appellant, v. D. CHANDLER, INC., Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-10-0346 |
| Filed | March 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile accident between plaintiff's vehicle and a pizza delivery vehicle, the entry of summary judgment for the delivery person's employer was reversed, since a genuine issue of material fact existed as to whether plaintiff was misled when he settled for the policy limits of the delivery person's insurance based on the incorrect information he received from the adjuster for the employer's insurer that the employer's policy was an excess policy that would apply only after the delivery person's insurance was exhausted; therefore, the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 09-L-814; the Hon. Ann Callis, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

A.J. Bronsky, of Brown & James, P.C., of St. Louis, Missouri, and Thomas Q. Keefe, Jr., of Thomas Q. Keefe, Jr., P.C., of Belleville, for appellant.

Michael J. Bedesky, of Reed, Armstrong, Gorman, Mudge & Morrissey, P.C., of Edwardsville, for appellee.

Panel

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.

Justice Stewart concurred in the judgment and opinion.

Justice Spomer dissented, with opinion.

**OPINION**

¶ 1    Plaintiff, David Ahle, appeals from an order of the circuit court of Madison County entering summary judgment in favor of defendant, D. Chandler, Inc. On appeal, plaintiff argues the trial court erred in granting summary judgment in favor of defendant. We reverse and remand.

¶ 2                                    BACKGROUND

¶ 3    On August 9, 2007, plaintiff was involved in an automobile accident with a Pizza Man pizza delivery vehicle being driven by Michael Whitelaw. Whitelaw was an employee of D. Chandler, Inc., doing business as Pizza Man. Plaintiff retained an attorney, Christopher Donohoo, to represent him in the matter. Mr. Whitelaw was insured by Allstate Insurance, and Pizza Man was insured by State Farm.

¶ 4    On March 9, 2009, plaintiff submitted a joint demand of $400,000 to Allstate and to State Farm via claims representatives Ms. Judy Creamer (Allstate) and Ms. Laurice Rollins (State Farm). In the letter, Donohoo explained that plaintiff (1) sustained injuries to his neck and shoulder during the accident, (2) was in need of surgery, (3) already incurred $24,000 in medical expenses, (4) would need surgery that would cost between $47,000 to $57,000, with the possibility of additional surgeries, and (5) cannot work and has lost and will continue "losing several hundred thousand dollars in future wages." Donohoo also explained that plaintiff's wage statements showed he earned between $60,000 and $65,000 during the previous five years.

¶ 5    On April 13, 2009, Ms. Rollins responded to attorney Donohoo's demand letter, stating in pertinent part as follows:

"As I previously explained the State Farm policy would be excess to the liability

-2-

coverage provided by Allstate Insurance. Insurance follows the car in the state of Illinois.

If and when the Allstate liability insurance is exhausted, will I then be required to review for additional consideration and payment as an excess policy."

Ultimately, Allstate tendered its policy limits of $100,000 to settle the bodily injury claim of plaintiff.

¶ 6       On May 8, 2009, Mr. Donohoo informed State Farm through Ms. Rollins that Allstate had tendered its policy limit and requested that State Farm indicate whether it planned to make a settlement offer. Donohoo explained that if State Farm was not going to settle, he planned "to file a lawsuit against Pizza Man by the end of the month."

¶ 7       On May 12, 2009, Ms. Rollins requested proof of Allstate's policy limits and confirmation that such limits had been tendered. The following day, Donohoo sent Rollins a copy of the letter he received from Allstate that tendered the policy limits. Throughout May and June 2009, Donohoo sent follow-up letters, plaintiff's medical records, and a copy of a disability decision by the Social Security Administration favorable to plaintiff to Ms. Rollins in the hope of settling the personal injury claim.

¶ 8       On July 6, 2009, plaintiff agreed to accept the $100,000 policy limit offer of Allstate on behalf of Michael Whitelaw. A release was executed on July 10, 2009, which stated in pertinent part as follows:

"[I]n consideration of the sum of One hundred thousand dollars ($100,000.00), receipt whereof is hereby acknowledged, for myself and for my heirs, personal representatives and assigns, I do hereby release and forever discharge Michael Whitelaw, Michael A. Whitelaw, Allstate Insurance and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, arising from any act or occurrence up to the present time and particularly on account of all personal injury, disability, property damages, loss or damages of any kind already sustained or that I may hereafter sustain in consequence of an accident that occurred on or about this 9th day of August, 2007, at or near Old Troy Road, Edwardsville, IL."

After that language, attorney Donohoo added "Excluding Pizza Man, Dennis Chandler" directly on the release. Plaintiff is no longer represented by attorney Donohoo, but has new counsel.

¶ 9       On August 6, 2009, plaintiff filed suit against Dennis Chandler, doing business as Pizza Man, for personal injuries related to the August 9, 2007, accident. He filed an amended complaint on October 5, 2009, naming D. Chandler, Inc., as defendant. On May 6, 2010, the parties filed a stipulation that attorney Donohoo, who previously represented plaintiff, wrote the words "Excluding Pizza Man, Dennis Chandler" on the release and that the words were written "in an attempt to avoid the release from barring Plaintiff's personal injury claim against Chandler in Chandler's capacity as employer of Michael A. Whitelaw."

¶ 10      On May 11, 2010, defendant filed a motion for summary judgment in which he argued that plaintiff's settlement with Whitelaw extinguished liability on the part of defendant, Whitelaw's employer. Plaintiff filed a response. On June 25, the trial court granted

defendant's motion for summary judgment. Plaintiff filed a timely notice of appeal.

¶ 11                                    ANALYSIS

¶ 12    The issue we address is whether the trial court erred in granting summary judgment in favor of defendant. Plaintiff contends State Farm misled plaintiff and his first attorney, Mr. Donohoo, by taking the position that its policy was "excess" and that it could not even negotiate with plaintiff until the Allstate policy was "exhausted," when in fact that was not the case. Plaintiff claims he and his attorney followed the misrepresentations of State Farm to his detriment and insists defendant should be estopped from asserting the defense that the Allstate settlement and release extinguished State Farm's liability. Defendant responds that State Farm did not misrepresent or conceal any material fact and that the issue here is purely legal, namely, whether plaintiff can make a claim against defendant after releasing defendant's agent, Michael Whitelaw. Defendant contends there is simply no issue of material fact and the trial court correctly entered summary judgment in favor of defendant.

¶ 13    Although summary judgment is an efficient and useful aid in the expeditious disposition of a lawsuit, it is a drastic measure that should only be employed if the right of the moving party is clear and free from doubt. *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 31, 826 N.E.2d 1111, 1124 (2005). A movant may only be granted summary judgment when all the pleadings, discovery materials, admissions, and permissible inferences, when analyzed in the light most favorable to the nonmoving party, so overwhelmingly favor the movant that no fair-minded individual could dispute the movant's right to a judgment in his or her favor. *Wysocki v. Bedrosian*, 124 Ill. App. 3d 158, 164, 463 N.E.2d 1339, 1344 (1984). On review, a trial court's decision to grant summary judgment will be affirmed only if the reviewing court concludes that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008); *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 8-9 (2008). Summary judgment appeals are reviewed *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). With a summary judgment motion, the trial court does not decide a question of fact but, rather, determines whether a question of fact exists. Therefore, a court cannot make credibility determinations or weigh evidence in deciding a summary judgment motion. *AYH Holdings, Inc.*, 357 Ill. App. 3d at 31, 826 N.E.2d at 1124. Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied and the issue decided by the trier of fact. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995).

¶ 14    Plaintiff insists that a question of fact exists as to whether plaintiff was misled by the State Farm adjuster on behalf of defendant, and, if so, estoppel would apply. Estoppel may arise where a party asserting the estoppel has relied to his or her prejudice or detriment on some conduct of the other party. *Old Mutual Casualty Co. v. Clark*, 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705 (1977). Estoppel may involve an "involuntary relinquishment of rights" by the insured and requires prejudicial reliance. *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 308, 631 N.E.2d 1292, 1298 (1994). The burden rests with the insured to establish prejudicial reliance " 'by clear, concise, and unequivocal evidence.' "

-4-

*American States Insurance Co.*, 260 Ill. App. 3d at 308, 361 N.E.2d at 1299 (quoting *Old Mutual Casualty Co.*, 53 Ill. App. 3d at 279, 368 N.E.2d at 705).

¶ 15    In the instant case, plaintiff settled his claim with Allstate, the driver's insurance company, and signed a release, but insists that he only did so at the direction of and due to the misrepresentations of defendant's insurance carrier, State Farm. Ms. Rollins, the State Farm adjuster assigned to the claim, told plaintiff's first attorney that she was not authorized to negotiate until the Allstate policy was "exhausted" and that the State Farm policy was "excess" to the Allstate policy. In our estimation, Rollins' statements could be construed as misleading.

¶ 16    The difference between primary and excess coverage is as follows:

> "Primary insurance coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. Primary insurers generally have the primary duty of defense. Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy." *Whitehead v. Fleet Towing Co.*, 110 Ill. App. 3d 759, 764, 442 N.E.2d 1362, 1366 (1982).

In the instant case, the Allstate policy and the State Farm policy are two separate, independent policies that cover two different insureds. Accordingly, both the Allstate policy and the State Farm policy are primary insurance policies. Defendant has failed to cite any language in the State Farm policy that specifies that State Farm is not required to pay until Mr. Whitelaw's coverage with Allstate is exhausted.

¶ 17    Nevertheless, relying on Rollins' statements and silence after sending additional correspondence to Rollins, attorney Donohoo settled plaintiff's claim against Mr. Whitelaw for his Allstate policy limits of $100,000. In order to disperse the funds, plaintiff was required to sign a release. While defendant claims attorney Donohoo was not instructed to settle and sign a release, Ms. Rollins' letter of April 13, 2009, can reasonably be construed as a contradiction to defendant's denial. In the letter Rollins specifically states, "If and when the Allstate liability insurance is exhausted, will I then be required to review for additional consideration and payment as an excess policy." Attorney Donohoo stated in his affidavit as follows:

> "5. I construed the term/word 'exhausted' as affirmation on the part of State Farm via Laurice Rollins, their agent, to settle with Allstate, obtain the policy limits and distribute the funds accordingly. It was then, and only then, I believed the liability insurance policy of Allstate would become 'exhausted' as set out in Laurice Rollins's correspondence of April 13, 2009.
>
> 6. I corresponded and spoke with both insurance adjusters on several occasions regarding settling the claims.
>
> 7. On April 29, 2009, Allstate Adjuster, Ms. Sharon Judy, sent me correspondence, tendering its policy limits.
>
> 8. Per my correspondence of May 8, 2009, and telephone conversations, I notified

and informed State Farm Adjuster, Ms. Laurice Rollins, that Michael Whitelaw's insurance company, Allstate, had tendered its policy limits.

9. On May 12, 2009, Ms. Rollins sent me correspondence requesting proof of Allstate's policy limits and confirmation that they had tendered their policy limits.

10. On May 13, 2009, I sent the April 29, 2009[,] Allstate correspondence to Ms. Rollins.

11. I construed State Farm's April 13, 2009, correspondence and subsequent silence and acquiescence as confirmation to settle the claim with Michael Whitelaw's insurance company, Allstate.

12. On July 6, 2009, I sent correspondence to Ms. Sharon Judy, settling the claim with Allstate.

13. I would not have settled the claim with Allstate if I had any inclination that State Farm would object and/or disapprove of the settlement with Allstate."

We also point out that in signing the release, Mr. Donohoo inserted the language "Excluding Pizza Man, Dennis Chandler" in an attempt to ensure that in signing the release plaintiff was in no way relinquishing his rights to any claim against Mr. Whitelaw's employer, defendant herein. Under this factual scenario, we conclude there is absolutely a genuine issue of material fact better left for the trier of fact, and, thus, the trial court erred in entering summary judgment in favor of defendant.

¶ 18     Defendant relies on *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 622 N.E.2d 788 (1993), in support of his contention that the release of the driver barred plaintiff's action against defendant, the driver's employer. *Gilbert* holds that where a plaintiff brings a *respondeat superior* action against a principal, a settlement between the agent and the plaintiff also serves to extinguish the principal's vicarious liability, even if the agent expressly reserves the plaintiff's right to seek recovery from the plaintiff. *Gilbert*, 156 Ill. 2d at 527-29, 622 N.E.2d at 796-97. *Gilbert*, however, is distinguishable from the case at bar because in *Gilbert* there was no allegation of malfeasance.

¶ 19     In this case, plaintiff claims State Farm's agent not only misled plaintiff's attorney with her April 13, 2009, letter but also acquiesced in the settlement by remaining silent after plaintiff's attorney sent additional correspondence to her. On the other hand, defendant insists that there was nothing misleading about Ms. Rollins' actions and that attorney Donohoo was well aware of a potential *Gilbert* problem as evidenced by the language he added to the release. However, defendant is merely speculating about what attorney Donohoo knew or did not know. In any event, attorney Donohoo's added language indicates that he did not want the broad general release language to bar a claim against the State Farm policy, and it is clear to us that reasonable minds could draw different and conflicting inferences from the undisputed facts. Under these circumstances, there is a genuine issue of material fact as to whether or not estoppel applies, and, thus, the trial court erred in entering summary judgment in favor of defendant.

¶ 20     For the foregoing reasons, the judgment of the circuit court of Madison County is hereby reversed and the cause remanded for further proceedings consistent with this opinion.

¶ 21    Reversed and remanded.

¶ 22    JUSTICE SPOMER, dissenting:

¶ 23    I respectfully dissent. The majority holds that there is a genuine issue of material fact as to whether State Farm should be estopped from asserting the plaintiff's release of the defendant's agent as a defense to this action against the defendant on a theory of vicarious liability. My colleagues leave it to the trier of fact to decide, in addition to the underlying claim of vicarious liability, the issue of whether the elements of equitable estoppel are met in the case as between the State Farm adjuster and the plaintiff's previous counsel. I believe the majority's decision to bring the issue of estoppel before a trier of fact in the case is in error and that the issue of estoppel must be determined as a matter of law.

¶ 24    The issue of whether equitable estoppel applies is properly decided as a matter of law when the facts are undisputed and reasonable persons could not differ as to the inferences to be drawn from the facts presented. *Pack v. Santa Fe Park Enterprises, Inc.*, 209 Ill. App. 3d 648, 652 (1991) (citing *Pantle v. Industrial Comm'n*, 61 Ill. 2d 365, 369 (1975)). In order for equitable estoppel to apply, the following six elements must be present: (1) the party to be estopped made a misrepresentation or concealment of material fact by words or conduct; (2) the party to be estopped knew or had reason to know the falsity of the misrepresentation or concealment; (3) the party asserting the estoppel did not know, or have reason to know, that the misrepresentation or concealment was false; (4) the party to be estopped intended, or reasonably expected, that the party asserting the estoppel would detrimentally rely on the misrepresentation or concealment; (5) the party asserting the estoppel detrimentally relied on the misrepresentation or concealment, both reasonably and in good faith; and (6) the party asserting the estoppel would be prejudiced if the party to be estopped were permitted to avoid the falsity of the misrepresentation or concealment. *Pack*, 209 Ill. App. 3d at 652 (citing *Vaughn v. Speaker*, 126 Ill. 2d 150, 162-63 (1988)). In order to benefit from estoppel, the party asserting the estoppel cannot neglect to seek information that is easily accessible and must have had no knowledge or means of knowing the true facts. *Pack*, 209 Ill. App. 3d at 652-53 (citing *Vaughn*, 126 Ill. 2d at 169 (Ryan, J., specially concurring, joined by Miller, J.)).

¶ 25    At the time the plaintiff executed the release of Michael Whitelaw, it was clearly the long-standing law in Illinois that a settlement between a plaintiff and an agent extinguishes, by operation of law, any claim that the plaintiff has against the principal under a theory of vicarious liability, regardless of whether the release of the agent expressly reserves the plaintiff's right to seek recovery from the principal. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 528-29 (1993). Despite this clear and long-standing precedent, the plaintiff asserts that his former counsel, in advising him to execute the release of Michael Whitelaw for the Allstate policy limits, detrimentally relied on the State Farm adjuster's statements in the letter of April 13, 2009, to the effect that the State Farm policy was an "excess" policy and that the adjuster would not consider the claim until Allstate liability insurance had been "exhausted." Other than these statements in the April 13, 2009, letter, and State Farm's

subsequent silence when the plaintiff's counsel notified State Farm that Allstate tendered its policy limits, the plaintiff points to no other statement or conduct on the part of State Farm upon which plaintiff's former counsel detrimentally relied in advising the plaintiff to execute a release of Michael Whitelaw. State Farm's statements and conduct do not negate the long-standing rule set forth in *Gilbert*, and I would hold that former counsel's alleged reliance on these statements when he advised the plaintiff to execute a release of Michael Whitelaw was unreasonable *as a matter of law*.

¶ 26        Regardless of whether the State Farm policy was excess, and whether or not State Farm would consider the plaintiff's settlement demand prior to exhaustion of the Allstate policy limits, the clear law in Illinois is that any settlement between the plaintiff, Michael Whitelaw, and D. Chandler, Inc., would be required to be executed simultaneously in order to preserve the plaintiff's claims for vicarious liability against D. Chandler. Even if State Farm's statements regarding the excess nature of its policy were true, it was incumbent upon the plaintiff's former counsel to know the *Gilbert* rule and to ensure that the finalization of settlements with Michael Whitelaw and D. Chandler were executed jointly prior to releasing either defendant. If settlement with State Farm as D. Chandler's carrier was not effectuated, the rule set forth in *Gilbert* effectively prohibited the finalization of any settlement with Michael Whitelaw. Any damage caused by the failure of the plaintiff's former counsel to so advise the plaintiff would, in my opinion, need to be addressed with counsel's malpractice carrier. For these reasons, I would affirm the order of the circuit court that granted a summary judgment for the defendant on the basis of the release.